# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | |
|---|---|
| **HESSMORGANHOUSE, LLC, d/b/a HMH CONSULTING,**<br><br>　　Plaintiff,<br><br>v.<br><br>**THE KINGDOM GROUP OF COMPANIES, LLC, d/b/a THE KINGDOM GROUP, et al.**,<br><br>　　Defendants. | Civil Action No. 7:18-CV-69 (HL) |

## ORDER

Plaintiff HessMorganHouse, LLC, d/b/a HMH Consulting ("HMH") entered into a series of written letter agreements with Defendant The Kingdom Group of Companies, LLC, d/b/a The Kingdom Group ("The Kingdom Group")[1] to provide consulting, organizational, and administrative services related to the development and management of a group life insurance plan. Ultimately, the plan

---

[1] The relevant contracts were entered into by HMH and The Kingdom Group. HMH also names as Defendants Kingdom Insurance Group, LLC and Nicholas J. Lewis, who HMH alleges are also liable for contractual violations. However, for the purposes of determining the outcome of the pending motions, the parties agree that any dispute they may have concerning the proper party to hold accountable for any breach is not material to the determination of whether there has been a breach of the contract in question. Accordingly, as suggested by the parties, the Court will refer to Defendants collectively as "The Kingdom Group" throughout this Order.

failed. The parties now dispute what sums, if any, remain owing for services performed under the contract.

Currently pending before the Court are the parties' cross-motions for summary judgment. After reviewing the briefs, and with the benefit of oral argument, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (Doc. 21) and GRANTS Defendants' Motion for Summary Judgment (Doc. 22).

## I.  FACTUAL BACKGROUND[2]

HMH is a life insurance consulting company. In June 2013, HMH entered into the first of a series of letter agreements with The Kingdom Group to provide consulting, organizational, and administrative services relating to the development and management of a group life insurance plan for the benefit of the National Hispanic Christian Leadership Conference. The first two agreements, dated June 27, 2013 and September 17, 2013, outlined the initial services HMH agreed to perform and the associated payment schedule. The fourth letter agreement, dated January 12, 2014, modified the payment schedule contemplated by the September 17, 2013 agreement. With the exception of The Kingdom Group asserting that it overpaid HMH by $5,000.00, the parties do not dispute that HMH performed the services contracted for under these three agreements or that The Kingdom Group paid for the services rendered in full.

---

[2] The facts set forth herein are derived directly from the parties' Joint Stipulation of Facts Pertaining to Cross-Motion for Summary Judgment (Doc. 20).

This case arises out of a dispute concerning the language contained in the third letter agreement, which the parties entered into on December 24, 2013. The December 2013 letter agreement sets out two phases for work to be performed by HMH. The first phase pertains to "pre-rollout services," and the second phase addresses "post-rollout services." The contract establishes a fee schedule for the pre-rollout services and further indicates that payment for those services shall be deferred in consideration of The Kingdom Group agreeing to retain HMH's services for the ongoing administration of the group term life insurance contract.

HMH completed the pre-rollout phase, and in late 2015, the life insurance plan was launched and policies became available through Prudential, the selected insurer for the plan. Only three policies were sold, producing total commissions for The Kingdom Group of $262.80. On January 26, 2017, Prudential terminated its participation in the plan effective March 21, 2017. No additional policies were sold. Consequently, HMH provided no further services under the December 2013 agreement. HMH alleges that The Kingdom Group owes $113,818.00 plus other associated damages for the pre-rollout services performed under the December 2013 contract.[3] The Kingdom Group denies owing any further sums to HMH.

---

[3] HMH states that the total hourly fee due is $118,818.00. However, HMH only seeks to recover $113,818.00, which takes into account the $5,000.00 overpayment alleged by The Kingdom Group.

## II.    SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them;

it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.    ANALYSIS

HMH moves for partial summary judgment, arguing that under the plain language of the contract in dispute, The Kingdom Group owes a total of $113,818.00 for pre-rollout services performed. In its cross-motion for summary judgment, The Kingdom Group relies on a separate contractual term that it contends unambiguously limits any payment due to HMH. Based on its assertion that there is a valid contract and that there has been no breach of the contract, The Kingdom Group also moves for summary judgment on HMH's remaining claims for breach of the covenant of good faith and fair dealing, quantum meruit, account, and attorney's fees.

### A.    Breach of Contract

The sole dispute before the Court for resolution is whether under the terms of the December 24, 2013 letter agreement The Kingdom Group owes HMH for the pre-rollout Services performed under the contract. HMH maintains that it agreed to defer any payment for pre-rollout services conditioned upon The

Kingdom Group retaining HMH for post-rollout services. Once the need for post-rollout services was eliminated by the termination of the life insurance plan, the condition could no longer be satisfied, and payment became due in full. The Kingdom Group argues that the agreement to retain HMH was a specific contractual term and not a condition and that the agreement regarding post-rollout services does not otherwise eliminate a separate term which The Kingdom Group points out clearly limits payment to a percentage of the total commissions received from the sale of the life insurance policies.

Under Georgia law, "[i]t is the function of the court to construe the contract as written and not make a new contract for the parties." Georgia Magnetic Imaging v. Greene Cty. Hosp. Auth., 219 Ga. App. 502, 504 (1995); see also Fernandes v. Manugistics Atlanta, 261 Ga. App. 429, 433 (2003) ("Neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it."). Contract construction requires a three-step analysis. See Mitchell v. Cambridge Property Owners Assn., 276 Ga. App. 326, 327 (2005). The court first must decide whether the contract language at issue is ambiguous. Ga.-Pac. Corp. v. Lieberam, 959 F.2d 901, 904 (11th Cir. 1992). If the court determines that there is an ambiguity, then the court must utilize the applicable rules of contract construction. Id. If, after applying those rules the ambiguity

remains, then a jury must resolve the ambiguity. Id. "Whether a contract is ambiguous is a question of law for the courts to decide." Id.

"Ambiguity exists where the words used in the contract leave the intent of the parties in question – i.e., that intent is uncertain, unclear, or is open to various interpretations." Capital Color Printing, Inc. v. Ahern, 291 Ga. App. 101, 106 (2008). "Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." Id. (citation and quotation marks omitted); see also Perkins v. M & M Office Holdings, LLC, 303 Ga. App. 770, 773 (2010) ("Unambiguous language must be afforded its literal meaning and plain ordinary words given their usual significance.") (citation and quotation marks omitted). If the language of the contract is unambiguous, "the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning." Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., 288 Ga. 749, 750 (2011) (citation and quotation marks omitted).

Under the terms of the December 24, 2013 letter agreement, the parties agreed that payment for pre-rollout services would be made according to a particular schedule:

The Kingdom Group shall pay HMH at the hourly rate of $300 for the services set forth above, payable as outlined below:

- The lesser of total HMH invoices or $15,000 upon receipt by The Kingdom Group of the initial commission payment from Prudential.
- The lesser of any remaining unpaid HMH invoices or $20,000 upon receipt by The Kingdom Group of the second commission payment from Prudential.
- The lesser of any remaining unpaid HMH invoices or $30,000 upon receipt by The Kingdom Group of a third commission payment from Prudential.
- Up to $30,000 on the same basis as set forth above upon receipt by The Kingdom Group of each subsequent commission payment from Prudential until such time as all outstanding HMH invoices have been paid in full.

This payment structure is then modified by the following language:

Notwithstanding the foregoing, no payment shall be made to HMH in excess of 20% of any commission payment, taking into account amounts payable to HMH that have been deferred and remain outstanding from all letter agreements, including this letter agreement.

The parties further agreed to postpone any payment until such time as the

plan started generating income for The Kingdom Group with the understanding

that The Kingdom Group would retain HMH to perform post-rollout services:

In consideration of our agreement to defer compensation for Pre-Rollout Services until such time as The Kingdom Group receives compensation from the product, The Kingdom Group agrees that HMH will undertake the ongoing administration of the group term life insurance contract issued by Prudential.

HMH's position is that The Kingdom Group agreed to compensate HMH for pre-rollout services at an hourly rate of $300.00. HMH performed the promised services and provided regular invoices to The Kingdom Group, documenting the services rendered and the number of hours worked, to which The Kingdom Group never objected. HMH further explains that under the contract HMH consented to defer payment of these invoices in exchange for The Kingdom Group retaining HMH to perform post-rollout plan administration services. HMH contends that it agreed to defer compensation for the pre-rollout services subject to the condition subsequent that The Kingdom Group would continue working with HMH through the post-rollout phase. And, because Prudential terminated its involvement and caused the demise of the plan, post-rollout services were no longer necessitated. Thus, the condition subsequent failed and HMH's obligation to defer payment further was negated.

"Where a contract has a condition subsequent, the occurrence may excuse performance or otherwise allow the contract to be modified." Dep't of Human Res. v. Citibank F.S.B., 243 Ga. App. 433, 436 (2000); see also Fulton Cty. v. Collum Properties, 193 Ga. App. 744, 775 (1989) ("The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties."). However, the "existence of a condition subsequent does not make

the [c]ontract vague or unenforeceable where there existed mutuality of obligation at the time of performance." Id. Rather, "[w]here a contract is definite in its terms, a . . . condition subsequent will not void the contract." Id. (citing O.C.G.A. § 13-3-4).

Additionally, Georgia courts draw a distinction "between conditions regarding the creation of an obligation and a condition only as to the time of performance." Powell Co. v. McGarey Group, LLC, 508 F.Supp.2d 1202, 1210 (N.D. Ga. 2007) (citing L. Gregg Ivey, Inc. v. Land, 148 Ga. App. 667, 668 (1979)). "When the existence of a debt is conditional on the happening of some event, payment cannot be enforced until the event happens; but when payment of an existing liability is postponed until the happening of an event which does not happen, payment must be made within a reasonable time." Id. (citation and quotation marks omitted).

There is no language in the contract indicating that payment by The Kingdom Group to HMH for any services rendered was conditioned upon HMH's future performance of post-rollout services.[4] What the contract says is that in exchange for continuing the contractual relationship, HMH agreed to defer, or

---

[4] There is also some disagreement about whether or not post-rollout services were ever performed. HMH represents that because Prudential ended its involvement, the post-rollout services never occurred. However, it is apparent that some limited post-rollout services were performed following the launching of the plan. (Doc. 20-8).

postpone, payment "until such time as The Kingdom Group receives compensation for the product." In other words, payment of the outstanding invoices was to be delayed until The Kingdom Group began receiving commissions. This term plainly addresses the timing of payment and not the creation of the obligation to pay. Unfortunately, while The Kingdom Group did receive limited commissions, thereby triggering the time for payment, the clear language of the contract restricted payment to a percentage of the commissions received. Ultimately, the issue before the Court is not when payment became due but how much is owed.

According to HMH, based on the agreed upon hourly rate of $300.00, The Kingdom Group presently owes a total of $113,818.00. Awarding HMH this sum would require the Court to read the following provision out of the contract: "Notwithstanding the foregoing, no payment shall be made to HMH in excess of 20% of any commission payment." But the Court is not at liberty to eliminate contractual terms; rather, the Court may only construe the contract as written. See Fernandes, 261 Ga. App. at 433.

Giving the words used in the contract their plain and ordinary meaning, the paragraph beginning with "notwithstanding" unambiguously places a limitation on any payment based on a percentage of the commissions received. The ordinary meaning of "notwithstanding" is "in spite of," or "without prevention or obstruction

from or by." Webster's Third New International Dictionary 1545 (1993); Black's Law Dictionary 1091 (7th ed. 1999) ("Despite; in spite of"); see also Brazeal v. Newpoint Media Group, LLC, 331 Ga. App. 49, 56 (2015). Reading the section of the contract entitled "Fees for Pre-Rollout Services" as a whole, the contract provides that even though the parties agreed to a set hourly rate to be paid out at specified times, namely upon The Kingdom Group receiving each commission payment, the parties further agreed that "notwithstanding," or "in spite of," that understanding, The Kingdom Group would not be obligated to make any payment to HMH "in excess of 20% of any commission payment." The Kingdom Group only received $262.80 in commissions. Twenty percent of that amount is $52.56. And, because The Kingdom Group had already overpaid HMH by $5,000.00, creating a credit to its account, The Kingdom Group has covered this sum and is not in breach of the contract.[5]

HMH argues that any reading of the contract that would make payment contingent upon receipt of commissions from the sale of the insurance product would illegally place HMH in the position of sharing in the commissions. (Doc. 21-1, p. 10-12); see O.C.G.A. § 33-23-4(d) (prohibiting commission payments to persons not licensed to sell insurance products). But the term in question is not a

---

[5] HMH disputes that The Kingdom Group overpaid in any amount. However, for the purposes of this lawsuit, HMH has stipulated to the $5,000.00 overpayment and adjusted the amount it seeks to recover accordingly. (Doc. 20, ¶ 22).

contingency but a limitation. Further, the term does not require The Kingdom Group to share any commissions received; rather it provides a mathematical formula for determining the amount due.

The Court is under no illusion that the parties never anticipated this result. Undoubtedly, both parties planned on profiting from the sale of many insurance policies. Alas, only three policies were ever sold, and that profit was never realized. At the same time, it is also clear that the parties are experienced at contract negotiation and drafting and knew how to account for contingencies, such as the plan failing.[6] For reasons unknown, they opted not to take the possible failure of the plan into consideration when negotiating the terms of the December 24, 2013 contract and are now left with the language they agreed upon, which unambiguously limits any payment to HMH to 20% of the commission payment received by The Kingdom Group, or $52.56.

## B. HMH's Remaining Claims

The Kingdom Group moves for summary judgment as to HMH's remaining claims for (1) breach of the covenant of good faith and fair dealing; (2) quantum

---

[6] Both the September 17, 2013 letter agreement and January 12, 2014 letter agreement set forth an alternative payment schedule "[i]n the event that no commissions are paid to The Kingdom Group." (Docs. 20-2, 20-4). These contracts also set forth dates certain for payment rather than the open ended "upon receipt . . . of the . . . commission payment" or "until such time as The Kingdom Group receives compensation" language included in the December 2013 letter agreement.

meruit; (3) account; and (4) attorney's fees.[7] HMH states that the parties, in arriving at their agreed upon stipulation of facts, also reached the agreement that cross motions for summary judgment would be limited to HMH's breach of contract claim. According to HMH, the facts before the Court are insufficient to support any ruling on its remaining claims, and additional discovery is warranted prior to disposition of those claims. The Court disagrees, finding that HMH's remaining claim are ripe for dismissal as a matter of law.

### 1.    Covenant of Good Faith and Fair Dealing

Generally, under Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Hunting Aircraft, Inc. v. Peachtree City Airport Auth., 281 Ga. App. 450, 451 (2006). But "the 'covenant' is not an independent contract term." Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990). Rather, the "implied covenant modifies and becomes a part of the provision of the contract, [and] cannot be breached apart from the contract provisions it modifies." U.S. Bank, N.A. v. Phillips, 318 Ga. App. 819, 824 (2012) (citation and quotation marks omitted). It therefore follows that "[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions

---

[7] In its brief in support of its motion for summary judgment, The Kingdom Group additionally addresses a potential failure of consideration claim raised in HMH's Complaint. (Doc. 1, ¶ 23). HMH concedes that it has not argued that there was a failure of consideration. (Doc. 24).

of the contract expressly give him the right to do." <u>Nobel Lodging, Inc. v. Holiday Hospitality Franchising, Inc.</u>, 249 Ga. App. 497, 500 (2001).

HMH concedes that without a viable breach of contract claim, there can be no breach of the covenant of good faith and fair dealing. (Doc. 24, p. 17). Having determined that The Kingdom Group did not breach the terms of the December 24, 2013 contract, the Court likewise finds that The Kingdom Group is entitled to summary judgment as to HMH's claim for an alleged breach of the covenant of good faith and fair dealing.

### 2. Quantum Meruit

In Count Three of the Complaint, HMH raises a claim for recovery under a theory of quantum meruit, alleging that The Kingdom Group has refused to tender payment for the value of services rendered by HMH and that it would be inequitable to permit The Kingdom Group to accept those services without payment. (Doc. 1 ¶¶ 43-47). But "[i]t is well established that recovery in quantum meruit is not authorized when, as here, the claim is based on an express contract." <u>Blueshift, Inc. v. Advanced Computing Technologies, Inc.</u>, 273 Ga. App. 802, 804 (2005) (citation and punctuation omitted); <u>see also</u> <u>Lord Jeff Knitting Co. v. Lacy</u>, 195 Ga. App. 287 (1990) ("While the parties may plead in alternative counts, there can be no recovery in quantum meruit where an express contract governs all the claimed rights and responsibilities of the parties.").

The parties here have stipulated that the December 24, 2013 letter agreement was a valid, written contract, and the Court has not found otherwise. (Doc. 20, ¶¶ 6, 17, 18). Accordingly, because HMH's claims are based on an express contract, HMH may not recover in quantum meruit, and The Kingdom Group is entitled to summary judgment.

### 3.   Account

HMH asserts a claim in Count Four of the Complaint for an account, alleging that based on the statements remitted by HMH to the Kingdom Group detailing the work it performed and the corresponding fee, The Kingdom Group defaulted on its account and owes HMH $113,818.00 plus interest and costs. (Doc. 1, ¶¶ 48-50). "An action on an open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as the amount due or the goods or services received." Watson v. Sierra Contracting Corp., 226 Ga. App. 21, 27 (1997) (citation omitted). However, "when there exists a bona fide dispute as to the amount due or the receipt of goods, open account is the wrong theory of recovery." Am. Teleconferencing Services, Ltd. v. Network Billing Systems, LLC, 293 Ga. App 772, 777 (2008) (citation and punctuation omitted).

Open account is not a proper theory of recovery in this case because there is a clear dispute about any amount purportedly owed by The Kingdom Group to HMH. The parties stipulated to the fact that HMH sent The Kingdom Group regular statements detailing the hours worked in preparation for the rollout of the life insurance plan. (Doc. 20, ¶¶ 21, 24). While the statements include a running tally for amounts HMH contends will be due at a future date, the statements do not otherwise take into account the parties' agreement that payment ultimately would be restricted to 20% of any commissions received by The Kingdom Group. The dispute between the parties about how that limitation impacts the total amount due to HMH for the pre-rollout services it performed takes this case out of the purview of an open account claim.

### 4.    Attorney's Fees

Finally, HMH asserts a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11. (Doc. 1, ¶ 52). Section 13-6-11 authorizes an award of attorney's fees "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Recovery of attorney's fees "in a contract action must be based upon evidence which shows *more* than a mere breach of contract." Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc., 230 Ga. App. 455, 457 (1998) (citation omitted; emphasis in

original). And, "where there is no award of damages or other relief on any underlying claim," attorney's fees are not recoverable. Security Real Estate Services, Inc. v. First Bank of Dalton, 325 Ga. App. 13, 14 (2013) (citation and quotation marks omitted). "The expenses of litigation recoverable pursuant to O.C.G.A. § 13-6-11 are ancillary and may only be recovered where other elements of damage are recoverable." Id.

Based on the Court's conclusion that under the unambiguous terms of the contract The Kingdom Group has not breached the agreement between the parties, HMH is not entitled to an award of attorney's fees as a matter of law, and summary judgment is appropriate.

## IV.    Conclusion

For the reasons discussed herein, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (Doc. 21) and GRANTS Defendants' Motion for Summary Judgment (Doc. 22). This case is hereby dismissed with prejudice.

**SO ORDERED**, this the 26th day of August, 2019.

_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

aks